IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


JEREMY A. DIXON                    .                                            PLAINTIFF


           V.                       Civil No. 3:15-cv-03003-MEF


CAROLYN W. COLVIN, Commissioner,
Social Security Administration                                                  DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, Jeremy Dixon, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed his applications for DIB and SSI on June 29, 2010, alleging an amended onset date of February 3, 2010,[1] due to chronic back pain, the left leg shorter than the right, poor

---

[1] Plaintiff originally alleged an onset date of October 19, 2007; however, he had also filed prior applications alleging the same onset date. (Tr. 34-51, 89) The ALJ denied those applications in a February 2, 2010, decision and the Plaintiff did not appeal. Accordingly, the relevant time period in this case begins February 3, 2010. (Tr. 14, 24)

vision, depression, headaches, neck pain, possible ruptured disks in the cervical spine, and medication side effects to include dizziness, drowsiness, and hyperactivity. (Tr. 230-241, 282) The Commissioner denied his applications initially and on reconsideration. (Tr. 126-129, 132-136) The Administrative Law Judge ("ALJ") held an administrative hearing on February 6, 2012. (Tr. 83-125) Plaintiff was present and represented by counsel. On January 10, 2013, the ALJ held a supplemental hearing and called both a medical expert (ophthalmologist) and a vocational expert to testify. (Tr. 52-82)

At the time of the hearing, Plaintiff was 37 years old and possessed a high school education. (Tr. 23, 230, 283) He had past relevant work ("PRW") experience as a forklift driver, general laborer, and telemarketer. (Tr. 283, 300-311)

On August 12, 2013, the ALJ concluded that Plaintiff's cerebral palsy with spastic diplegic[2] pattern in the left lower extremity with leg length discrepancy, degenerative disk disease of the cervical and lumbar spine, mild spondylosis of the thoracic spine, obesity, hypertension, right eye exotropia with amblyopia, and sinusitis were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 17-19) After partially discrediting the Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work except:

> he can sit no more than 30 minutes at any one time, but he does not need a break from his work station; he can stand or walk up to 15 minutes at any one time; he can change from sitting to standing or walking or from standing to walking or sitting without needing to rest or otherwise be unable to perform normal work duties; he can remain on task while sitting, standing, walking, or shifting between these positions; he cannot push or pull levers or foot pedals with his lower extremities, and cannot bend, twist, or turn more than occasionally; he cannot kneel,

---

[2] Diplegic or spastic cerebral palsy is a form of cerebral palsy characterized by tense muscles and spasms, particularly in the legs. Centers for Disease Control and Prevention, *Facts About Cerebral* Palsy, at http://www.cdc.gov/ncbddd/cp/facts.html (last accessed February 24, 2016). People suffering from this disorder often "have difficulty walking because tight hip and leg muscles cause their legs to pull together, turn inward, and cross at the knees." *Id*.

crawl, or climb ropes, ladders, or scaffolds; he can stoop or squat less than occasionally; he needs a cane for balance when walking, but using a cane will not reduce his capacity to lift or carry; he cannot walk on uneven terrain; he cannot use air or vibrating tools or motor vehicles, or work at unprotected heights; he requires the use of safety glasses; and he cannot perform work that requires fine visual acuity such as the use of slotted screws or repair watches. (Tr. 19)

With the assistance of a vocational expert, the ALJ then found Plaintiff capable of performing work as a call-out operator, charge account clerk, and addresser. (Tr. 24)

The Appeals Council denied Plaintiff's request for review on November 10, 2014. (Tr. 1-7) Subsequently, Plaintiff filed this action. (ECF No. 1) This matter is before the undersigned by consent of the parties. (ECF No. 9) Both parties have filed appeal briefs, and the case is now ready for decision. (ECF Nos. 13, 14)

## II.     **Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982) (en banc) (abrogated on other grounds); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.     Discussion:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing his or her RFC. *Vossen v. Astrue,* 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant

evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The record before the Court contains over 600 pages of medical evidence and no less than 7 formal RFC assessments. The Plaintiff testified he is unable to work due to weakness and a length discrepancy in his left leg, making it difficult for him to walk. This weakness reportedly caused his left foot to drop, tripping him and resulting in frequent falls. Plaintiff also complained of disabling pain in his neck and back, aggravated by prolonged sitting or standing and requiring him to change positions constantly. Additionally, he alleged significant vision problems, primarily involving his right eye, stating he could barely read, even with glasses.

An MRI of his thoracic spine completed in November 2007 showed only mild spondylosis with a small left paracentral disk protrusion at the T6-7 level, but no neural impingement. (Tr. 427) An MRI of his lumbar spine conducted in April 2010 revealed minimal degenerative disk space changes at the T12-L1 and L1-2 levels with central canal stenosis, which the radiologist found to be secondary to the Plaintiff's small central canal. (Tr. 418, 446-447, 491, 503, 673) Mild bilateral foraminal narrowing was also noted at those levels, along with mild central canal stenosis at the

5

L2-3 level and mild to moderate neural foraminal narrowing at the L2-3, L3-4, L4-5, and L5-S1 levels secondary to the Plaintiff's congenital narrowing. In August 2010, an MRI of his cervical spine revealed degenerative changes centered at the C3-4 and C5-6 levels. (Tr. 559)

Neurological and physical examinations have revealed a significant gait abnormality secondary to a congenital leg length discrepancy on the left of 3/4 inch (limping and dragging left leg); tenderness in the paraspinal muscles at the L5 region; pain with extension and rotation of cervical spine; pain over facet joints at the C2-3, C3-4, and C4-5 levels bilaterally; severe spasticity with some atrophy of the left lower extremity; weakness in lower extremities with increased deep tendon reflexes, left greater than right; decreased ankle dorsiflexion and plantar flexion bilaterally; and, tightness in the hamstrings secondary to the leg length discrepancy. Pain specialist, Dr. Thomas Brooks, numerous primary care physicians, a neurologist, and an orthopedist evaluated the Plaintiff, diagnosing him with chronic back and neck pain, spinal stenosis, cervicalgia secondary to cervical spondylosis, and diplegic cerebral palsy pattern with greater involvement of the left leg. Doctors unsuccessfully prescribed facet joint injections and physical therapy. (Tr. 581-883, 592-596, 831-832) Further, Botox injections into his legs were administered, resulting in only slight improvement in flexibility and range of motion. (Tr. 722-724) Because doctors did not find him to be a surgical candidate, his treatment ultimately consisted of multiple narcotic pain medications[3], custom orthopedic shoe inserts, and a TENS unit. Records also indicate that the Plaintiff was prescribed and used a cane to help him balance, as his gait was rendered unsteady due to the leg length discrepancy. (Tr. 840-842)

---

[3] OxyContin and Percocet.

On August 6, 2010, treating physician,[4] Dr. Janiece Rachelle Bridges completed a Medical Source Statement. (Tr. 545-545) She indicated he could lift and/or carry 5 pounds frequently and less than 5 occasionally; stand and/or walk for 30 minutes continuously for a total of 2 hours each per 8-hour workday; and, sit continuously for 45 minutes for a total of 2 hours. Dr. Bridges explained that the Plaintiff could lift a gallon of milk without pain, but was unable to shop in Wal-Mart unless he used a motorized cart. In smaller stores, she indicated he could walk while holding the basket. Dr. Bridges also stated the Plaintiff required frequent position changes, *i.e.*, changing chairs, standing, and even lying down. Further, his ability to push/pull was limited due to increased back pain with these activities. Dr. Bridges opined the Plaintiff could never climb, balance, kneel, crouch, crawl or be exposed to heat, cold, weather, wetness/humidity, vibration, hazards, and heights. Further, he could only occasionally stoop and should avoid concentrated exposure to dust/fumes.

On April 27, 2011, Dr. Carl Covey[5] completed a Medical Source Statement. (Tr. 617-618) Dr. Covey opined that the Plaintiff could lift and/or carry 10 pounds; stand/walk less than 15 minutes continuously for less than 1 hour total per 8-hour workday; and, sit 15 minutes continuously for less than one hour total. The doctor also indicated the Plaintiff would be limited with regard to pushing/pulling due to weakness in his left leg and an unstable gait. Further, Dr. Covey concluded the Plaintiff could occasionally finger and feel and should avoid all exposure to vibration, hazards, and heights; avoid moderate exposure to extreme cold and dust/fumes; and, avoid concentrated exposure to extreme heat, weather, and wetness/humidity. He also opined the

---

[4] Records indicate Drs. Leonard and Janiece Bridges (father and daughter) treated the Plaintiff at Bridges Family Medical Clinic throughout the relevant time period.
[5] Dr. Carl Covey was the Plaintiff's pain specialist through 2010, at which point the Plaintiff established with Dr. Jessica VanBibber.

Plaintiff's pain would require frequent breaks, 15-20 minutes in duration, and medication side effects would render him drowsy.

In August 2011, Dr. Jamie Durfey, a primary care physician, indicated Plaintiff was able to climb one flight of stairs and lift up to 10 pounds occasionally. (Tr. 706-708, 810-813)

On January 30, 2012, Dr. Leonard Bridges completed an RFC assessment. Tr. 747-748. He concluded the Plaintiff could occasionally and frequently lift 5 pounds; stand/walk continuously for 15 minutes for a total of one hour each per 8-hour workday; sit continuously for 45 minutes for a total of 4 hours; never climb, balance, stoop, kneel, crouch, or crawl; and, occasionally reach, handle and speak. Dr. Bridges also opined the Plaintiff had poor far acuity; fair near acuity; and poor depth perception. Further, the doctor stated Plaintiff should avoid any exposure to extreme heat or cold, weather, wetness/humidity, dust/fumes, vibration, hazards, and heights. Additionally, he noted that pain required the Plaintiff to lie down or recline every 15-90 minutes for 15-30 minutes.

In March 2012, neurologist, Dr. Christopher Andrew examined the Plaintiff at the Commissioner's request. (Tr. 840-842) He noted a lower extremity weakness making Plaintiff a fall risk, a spastic paraplegic gait with external rotation of the feet, spastic paraparesis[6] because of cerebral palsy, and decreased ankle dorsiflexion and plantar flexion bilaterally. Further, he indicated the Plaintiff required the use of a cane for stability. Although not asked to complete a formal RFC assessment, Dr. Andrew opined the Plaintiff could not stand for longer than 15 minutes at a time, could not lift or carry heavy objects, and suffered from visual difficulties eroding his ability to operate computers and perform office type activities.

---

[6] Paraparesis is partial paralysis of the lower limbs.

On January 9, 2013, Dr. Leonard Bridges completed a second Medical Source Statement. (Tr. 960) He concluded the Plaintiff could lift/carry less than 5 pounds frequently; stand and/or walk 1 hour per 8-hour workday, and sit less than 15 mins continuously. Dr. Bridges also indicated that his visual limitation would limit his ability to focus on small objects while using hand tools, as well as his ability to focus on fine print or other small objects on a sustained basis, such as computer screens. Further, the doctor opined the Plaintiff required the use of prosthetic shoe lifts used 100% of time and needed a cane to increase his stability. Additionally, he opined the Plaintiff's impairments and treatment would cause him to miss three or more days of work per month.

We note that the ALJ did make explicit RFC findings. However, the ALJ's determination that the Plaintiff, in spite of taking moderate to high doses of narcotic pain medications for significant pain that requires frequent and regular position changes, could remain on task for an entire 8-hour workday without interruption puzzles the undersigned. The absence of balancing and carrying restrictions in the RFC is also troublesome. Given the Plaintiff's reliance on a cane for both balance and stability, we find it difficult to understand how he could perform activities requiring him to balance and carry objects. For these reasons, we find remand necessary to allow the ALJ to reconsider the Plaintiff's RFC.

We also note that Dr. Leonard Bridges completed forms addressing the specific elements of Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), and 11.07 (cerebral palsy). (Tr. 965-967) The ALJ, however, did not refer to these forms. Instead, he dismissed Dr. Bridges' assessments, stating that his treatment notes did not support them. Given the degree of detail and specificity included, we further direct the ALJ to consider these forms. Moreover, due to Dr. Bridge's lengthy treating relationship with the Plaintiff and the objective evidence in the

record, the ALJ must provide very specific reasons for discounting and/or dismissing these assessments on remand.

**IV.     Conclusion**:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 25th day of February, 2016.

/s/Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE